## [No. 2106.]

### A. R. Woodyard *v.* The State.

1. Malicious Mischief — Charge of the Court.— The appellant was convicted of pulling down the fence of one A., without his consent. The proof showed that appellant was a tenant of A.'s on land separated by a cross fence, which A. owned, from other land occupied by C., and that, to recover some of his hogs which had strayed across the fence into the inclosure of C., the appellant, without A.'s consent, pulled and left down a panel of the fence. It was also proved that the crops had all been gathered and that A.'s field contained nothing which could have been injured by stock. Under this state of proof the court refused a special charge to the effect that "the fence of A. would in law be the fence of defendant, and if the fence in question was the fence of said A., but inclosed defendant's land, defendant would have the right to let down said fence and call his hogs into the field." *Held*, that in refusing the special charge the court erred, because the appellant was a joint owner with A. of the fence during his tenancy, and had the same rights in and to the fence that A. had. The rule that a joint owner of a fence has no right to pull down or injure the same without the consent of the other joint owner, will not authorize a conviction when, in a case like the present, it appears that no injury was nor could have been done, and that the purpose of the accused was a legitimate one.

Appeal from the District Court of Panola. Tried below before the Hon. J. G. Hazlewood.

The conviction was for pulling down a fence without the owner's consent, and the penalty imposed was a fine of $10.

The opinion discloses the case.

No brief for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

Willson, Judge. Defendant rented land from one Adams, and cultivated the same during the year 1884. Adams cultivated land during said year inclosed by the same fence that inclosed the land

rented by defendant. This fence, on one side of the inclosure, was a division fence between Adams's inclosed land and the inclosed land of one Chatham, but the fence belonged to Adams,— that is, that portion of it in question in this case. Defendant's hogs, it seems, had strayed into Chatham's inclosure, and, for the purpose of getting them out of said inclosure, defendant pulled down one panel of the said division fence and failed to put it up. At the time he pulled down the fence the crops in the inclosures had all been gathered, and there was nothing in the field of Adams that stock could have injured. Adams did not give his consent to defendant to pull down the fence.

Upon the trial of the case the court charged the jury, in substance, that if the jury believed from the evidence that the defendant pulled down the fence without the consent of Adams, they would find him guilty. Defendant requested several special charges which were refused, among them the following: "The fence of Adams would, in law, be the fence of defendant, and if the fence in question was the fence of said Adams, but inclosed defendant's land, defendant would have the right to let down said fence and call his hogs into the field." We think it was error to refuse this charge. Defendant being the tenant of Adams, of land inclosed by the fence, had lawful possession of, and the right to use, said inclosure for any legitimate purpose which would not cause injury to his landlord, Adams. He was a joint owner with Adams of the fence during the year 1884, and had the same rights in and to the inclosure that Adams had. (*Coggins* v. *The State*, 12 Texas Ct. App., 109.)

It is true that this court has held that one joint owner of a fence has no right to pull down or injure the same without the consent of the other joint owner. This is upon the principle that one joint owner of property must not be permitted to so use it or deal with it as to injure the other joint owner. (*Hurlbut* v. *The State*, 12 Texas Ct. App., 252.) If, therefore, Adams was injured, or might have been injured, by the pulling down of the fence, the defendant would be guilty of a violation of the law. But it very clearly appears that Adams was not in the least injured, and could not have been injured thereby. He had nothing inside the inclosure that required protection at that time, and on the next day thereafter Adams reset the entire fence and put up the panel which defendant had let down.

The obvious purpose and intention of the law under which this conviction has been had is to protect agricultural interests; to pre-

vent wanton or reckless depredations upon crops by stock, caused frequently by irresponsible parties. (*Cleveland* v. *The State*, 8 Texas Ct. App., 44.) While to effect such purpose and intention, the law should be rigidly enforced, it should not be enforced to the extent of punishing one who has merely violated its letter without in the least infringing upon its intent. This would be unreasonable and unjust. It would be making the law an engine of oppression, instead of a shield of protection. We think the special charge asked and refused, above quoted, announced a correct principle, in accord with the spirit of the law, and applicable to the facts of this case, and that the failure of the court to give it was material error calculated to injure the defendant's right, and requiring a reversal of the judgment.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

[Opinion delivered December 9, 1885.]